UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D<small>APHNE</small> R<small>EED</small>

        Plaintiff,

    v.

D<small>ELTA</small> A<small>IR</small> L<small>INES</small>, I<small>NC</small>.

        Defendant.

                              /

Case No. 18-13990

S<small>ENIOR</small> U. S. D<small>ISTRICT</small> J<small>UDGE</small>
A<small>RTHUR</small> J. T<small>ARNOW</small>

**O<small>RDER</small> G<small>RANTING</small> D<small>EFENDANT'S</small> M<small>OTION TO</small> S<small>UMMARY</small> J<small>UDGMENT</small> [13]**

On December 2, 2019, Plaintiff Daphne Reed, a flight attendant, filed this disability discrimination case against her current employer, Defendant Delta Airlines, Inc., for placing her on probation in violation of the Family Medical Leave Act (FMLA) and the American with Disabilities Act (ADA). Specifically, Plaintiff's Complaint [1] alleges Interference with her FMLA rights (Count I), Retaliation under FMLA (Count II), Retaliation under ADA (Count III), and Hostile Work Environment under ADA (Count VI)[1].

On January 15, 2021, Defendant filed a Motion for Summary Judgment [13]. Plaintiff filed a Response [15] on February 26, 2021. Defendant filed a Reply

---

[1] Plaintiff voluntary dismissed her age discrimination and Title VII claims under counts IV, V, and VII.

[17] on March 12, 2021. The Court held a hearing on the Motion [13] on June 11, 2021. For the reasons stated below, the Court **GRANTS** Defendant's Motion for Summary Judgment [13].

**FACTUAL BACKGROUND**

a. <u>Plaintiff's work history and illness</u>

Plaintiff worked as a Flight Attendant for Northwest Airlines until the company merged with Defendant Delta Airlines, Inc. in 2009. (ECF No. 13-2, PageID.100, 102-03). In 2010, she was diagnosed with Deep Vein Thrombosis (DVT), an illness that caused a blood clot to form in her left leg. (*Id.* at 103). Plaintiff underwent surgery to have the blood clot removed from her deep vein, as a result, she developed venous stasis, a chronic vein issue which causes bad circulation. (*Id.* at 100). Plaintiff chronically experiences leg swelling and pain and often cannot sit or stand for long periods of time. (*Id.* at 100-01).

Plaintiff's illness flares-up intermittently, requiring her to call out sick from work. (*Id.* at 109). As a result, she has had 12 weeks of intermittent FMLA leave approved every year since 2010. (*Id.*). FMLA leave lasts for only 12 months. Therefore, Plaintiff must seek approval for re-certification each year by providing updated medical documentation.

b. Delta's Policies

Delta requires that its employees sign-in at the airport for a flight at least one hour before a domestic flight and one-and-a-half hours before an international flight. (*Id.* at 103). Additionally, an employee who will be absent needs to call in at least three hours before their sign-in time. (*Id.*). An employee who is using FMLA leave for an absence is required to state so when they call in. Furthermore, if the employee is initiating a new FMLA claim, they must also call Sedgwick, Delta's third-party administrator, on the same day. (*Id.* at 107).

Late sign-ins and absences not covered by FMLA, are considered "unaccountable" and are placed on an employee's reliability record. (ECF No. 13-2, PageID.148). If an employee accrues several late sign-ins and/or unaccountable absences, Delta may take one of several disciplinary actions against them: Verbal Coaching, Written Coaching, Corrective Action Notice, and Final Corrective Action Notice. (ECF No. 13-5); (ECF No. 13-3, PageID.134). Each action remains on an employee's file for 12, 18, 24, and 36 months, respectively. (*Id.*). The coachings are considered "counseling session[s]" from an employee's supervisor about issues in their work performance, while notices are given if an employee fails to show improvement from previous coaching or commits a serious infraction. (*Id.*). A Final Corrective notice may result in a review for termination. (*Id.*).

c. <u>Plaintiff's absences and discipline</u>

Plaintiff has been issued several coachings and one Corrective Action Notice, due to her absences and late-sign ins. (ECF No. 13-8). Plaintiff, however, disputes three absences that she claims should have been covered by FMLA, and not counted against her.

*July 21, 2017 absence*. Prior to this date, Plaintiff had an open FMLA claim which ran from December 9, 2016 to May 26, 2017. (ECF No. 13-12). Plaintiff did not send in medical documentation to re-certify her claim. (ECF No. 13-14, PageID.266). Despite this, Plaintiff experienced a flare-up on this date and called in sick. (ECF No. 13-15, PageID.272). Because Plaintiff did not have an approved FMLA claim on file, Delta recorded this against her as an unaccountable absence. (*Id.*).

*August 31, 2017 absence and late call-in*. Still without a certification, Plaintiff called in sick on this day. (ECF No. 13-14, PageID.266). Additionally, Plaintiff did not call at least three hours before her sign-in time, as required by policy. (ECF No. 13-15, PageID.271). Because she did not have an approved FMLA claim and her call-in was late, Delta recorded this as an unaccountable absence. As a result, Plaintiff received a Written Coaching on September 16, 2017. (ECF No. 13-12, PageID.172). During the coaching session, Plaintiff agreed that she needed to work

on her reliability. (*Id.*). Plaintiff also submitted updated medical documentation and for July 16, 2017 to July 16, 2018. (ECF No. 16-3, PageID.448-450). Delta then approved Plaintiff for FMLA leave for August 31, 2017 to July 16, 2018. (ECF No. 15-4, PageID.346). However, Delta did not retroactively cover Plaintiff's August 31st absence, because she was late signing in. (ECF No. 13-4, PageID.264). Plaintiff appealed this decision and the appeal was denied on December 18, 2017. (ECF No. 13-19).

*October 2, 2017 absence and late call-in*. On this date, Plaintiff called in sick during a multi-day international flight trip. On the call, Plaintiff requested FMLA leave. However, the administrator did not hear her mention FMLA, resulting in her request being denied. (ECF No. 13-2, PageID.113). After several back and forth phone calls, a Delta administrator found the record of the original phone call, confirmed that Plaintiff requested FMLA leave, and ultimately approved her leave on January 1, 2018. (*Id.* at 112-13). Prior to this approval, Plaintiff received an Informal Verbal Coaching on November 14, 2017. (ECF No. 13-8, PageID.171). The report states that the purpose of the coaching was for her late sign-in and that Plaintiff told her supervisor that her absence would be approved for FMLA by Sedgwick. (*Id.*).

On March 5, 2019, Plaintiff received a Corrective Action Notice for three absences and five late sign-ins on her previous 12-month reliability record. (ECF No. 13-22). Although her previous coachings were referenced on the notice, it does not state that she received the notice because of her previous coachings. (*Id.*). The notice was active on her record for 24 months and prevented Plaintiff from transferring and seeking a promotion while it was active. (ECF No. 13-22). The notice expired on March 5, 2021. (ECF No. 13-8, PageID.171). Plaintiff still works for Delta.

Plaintiff a launched an EEOC claim for discrimination and received a notice of no findings on September 26, 2018. (ECF No. 13-23). Plaintiff sues claiming that her disciplinary actions were an interference with and/or a retaliation against her FMLA leave requests. She also claims that Delta created a hostile work environment, which caused her to be diagnosed with anxiety and depression. (ECF No. 13-2, PageID.102).

## LEGAL STANDARD

Defendant moves for summary judgment on all claims. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56 (a). The moving party has the burden of establishing that there are no genuine issues

of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

### I. Count I: FMLA Interference

To establish a FMLA interference claim, Plaintiff must show that: "(1) she was an eligible employee; (2) her employer was a covered employer; (3) she was entitled to leave under the FMLA; (4) she gave her employer notice of her intent to take leave; and (5) her employer denied her FMLA benefits or interfered with FMLA benefits or rights to which she was entitled." *Crawford v. JP Morgan Chase & Co.*, 531 F. App'x 622, 625 (6th Cir. 2013) (internal citations omitted). Where "an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a violation has occurred, regardless of the intent of the employer." *Marshall v. The Rawlings Co. LLC*, 854 F.3d 368, 384 (6th Cir. 2017) (internal citation and quotation marks omitted). "An employer may require that [an] eligible employee obtain subsequent [medical] re-certifications *on a reasonable basis*." *Graham v. BlueCross BlueShield of Tenn., Inc.*, 521 F. App'x

419, 423 (6th Cir. 2013) (citing 29 U.S.C. § 2613(e)) (emphasis in original). If the employee fails to provide the requested certification, the employer may deny the employee's request for FMLA leave. *Id.*

Plaintiff's FMLA interference claim fails, because she cannot show that she was entitled to leave under the FMLA and that Delta denied her FMLA benefits to which she was entitled. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012). Defendant correctly argues that Plaintiff was denied FMLA approval for her absences on July 21, 2017 and August 31, 2017, because she did not have an active medical certification at the time of her absence. The record shows that Plaintiff had a medical certification for FMLA leave from December 9, 2016 to May 26, 3017. (ECF No. 13-12). The document approving this certification explicitly states that if Plaintiff's leave needed to be modified or extended beyond what was currently approved, then her doctor would need to provide additional or updated documentation. (*Id.*).

Plaintiff claims that she did not have medical coverage in July and August, because her flare-ups were unexpected. However, this seems doubtful, considering that she suffers from a chronic condition, for which she has sought FMLA leave every year since 2010. (ECF No. 13-2, PageID.109). Furthermore, an alleged

unexpected flare-up for a chronic condition is insufficient to show extenuating circumstances preventing her from re-certifying within the intervening two months. *See* 29 C.F.R. § 825.302 (d) ("[w]here an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA–protected leave may be delayed or denied.").

Plaintiff additionally argues that once Defendant approved her medical certification from August 31, 2017 to July 16, 2018, her August 31, 2017 absence should have been retroactively approved for FMLA leave. However, the record shows that Plaintiff called her absence in late and therefore failed to comply with Defendant's attendance policies. Under FMLA regulations, an employer may "condition FMLA-protected leave upon an employee's compliance with the employer's usual notice and procedural requirements, absent unusual circumstances." *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 614 (6th Cir. 2013); *see also Cundiff v. Lenawee Stamping Corp.*, 597 F. App'x 299, 300 (6th Cir. 2015) (finding that an employee was not entitled to FMLA leave rights when he failed to comply with the employer's attendance procedural requirements). Plaintiff admitted during her deposition that she knew—and did not comply with—Defendant's attendance policies, which justifies Defendant's refusal to approve her FMLA leave. (ECF No. 13-2, PageID.107, 117-18).

Plaintiff additionally claims that the initial denial and delayed approval of her FMLA leave on October 2, 2017 was an interference in her benefits, because the Corrective Action Notice ("CAN") was partially based on the Informal Verbal Coaching she received from this absence, making it a "faux" approval. First, Defendant does not dispute that Plaintiff was entitled to, but was incorrectly denied FMLA approval for October 2nd. Nevertheless, the mistake was corrected, and her October 2nd absence has since been covered by FMLA. Second, although Plaintiff's CAN does mention the Informal Verbal Coaching, this coaching specifically states that it addressed her five-minute late sign-in, not her absence. (ECF No. 13-8, PageID.171). Although Plaintiff's FMLA leave for October 2nd was delayed, for the reasons just stated, there is no evidence that Defendant interfered with her rights or used her leave as a basis for her CAN. This claim is denied.

## II.  Count II & III: Retaliation under FMLA and ADA

### a. FMLA Retaliation

To establish her prima facie case of FMLA retaliation, Plaintiff must show that (1) she engaged in FMLA-protected activity; (2) Delta knew that she was exercising FMLA rights; (3) she suffered an adverse employment action; and (4) there was a causal connection between the FMLA-protected activity and the adverse employment action. *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283 (6th Cir.

2012). Once Plaintiff satisfies her prima facie case, the burden shifts to Defendant to provide a legitimate, non-discriminatory reason for the adverse employment action. The burden then returns to Plaintiff to show that Defendant's proffered reason is pretextual. *Id.* at 285.

Plaintiff claims that her protected activity—absences on July 21, 2017, August 31, 2017, and October 2, 2017—unlawfully formed the basis for Defendant's adverse employment action against her—a 24-month Corrective Action Notice ("CAN"). Defendant argues that there is no causal connection between these unaccountable absences and the CAN, which was issued two years later on March 5, 2019. The record supports this argument.

First, there is no temporarily proximity between the 2017 absences and the 2019 CAN. Nevertheless, even if temporal proximity could be proven, "temporal proximity alone is rarely, if ever, sufficient to establish causation" and "[t]here generally must be other indicia of retaliatory conduct." *Sensabaugh v. Halliburton*, 937 F.3d 621, 630 (6th Cir. 2019). Second, the CAN states that it was issued based on a limited "review of [Plaintiff's] previous twelve-month reliability record[,]" which "reflects three days sick on one occasion and five times tardy." (ECF No. 22). Third, although the CAN references her previous verbal and written coachings on

November 14, 207 and September 16, 2017, there is no evidence that either of them caused her CAN.

Further, Delta presents a legitimate, non-discriminatory reason for each disciplinary action against Plaintiff. The Written Coaching Plaintiff received on September 16, 2017 was for a failure to cover and late sign-in on August 31, 2017. (ECF No. 13-8, PageID.172). Plaintiff does not dispute that she was late calling in her absence on this date. (ECF No. 13-2, PageID.118). On November 14, 2017, Plaintiff received an informal verbal coaching for again calling in late for her absence on October 2, 2017. Plaintiff again does not dispute this. (ECF No. 13-8, PageID.171). Lastly, Plaintiff's CAN on March 5, 2019 was based on three sick days and five late sign-ins that Plaintiff does not dispute. Therefore, Plaintiff has failed to show pretext or any evidence "from which the jury could reasonably reject [the defendant's] explanation and infer that the defendant intentionally discriminated against [her]." *Clark v. Walgreen Co.*, 424 Fed. Appx. 467, 474 (6th Cir. 2011) (unpublished). Defendant is entitled to summary judgment on this claim.

### b. ADA Retaliation

To establish a prima facie case of retaliation, Plaintiff must show that: 1) she availed herself of a protected right under the Act; 2) her employer knew she availed

herself of that right; 3) she suffered an adverse employment action; and 4) there was a causal connection between the exercise of her rights under the Act and the adverse employment action. *See, e.g.*, *Baker v. Windsor Republic Doors,* 414 F. App'x 764, 776 (6th Cir. 2011). Once a prima facie case is shown, Defendant must then "prove by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct." *Sowards v. Loudon Cnty., Tenn.,* 203 F.3d 426, 431 (6th Cir. 2000). After which, Plaintiff may "show that the proffered reason was not its true reason but merely a pretext for retaliation." *Harris v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.,* 594 F.3d 476, 485 (6th Cir. 2010).

Plaintiff claims that her FMLA leave requests, or at the least her calls in sick, should be construed as requests for accommodation under the ADA. The Sixth Circuit in an unpublished opinion and at least one other court in our district agree with this contention. *Hurtt v. Int'l Servs., Inc.*, 627 F. App'x 414, 423 (6th Cir. 2015) (holding that FMLA requests are protected acts); *Anderson v. Detroit Transportation Corp.*, 435 F. Supp. 3d 783, 799 (E.D. Mich. 2020) ("[r]equesting accommodation for a 'serious health condition,' qualifying for FMLA leave, can serve as a 'protected activity' under the ADA."). The Court follows this circuit's persuasive precedent and constitutes Plaintiff's FMLA requests as protected activity under the ADA.

Despite this, for the same reasons outlined under the FMLA retaliation claim, this claim fails because Plaintiff has neither sufficiently shown a causal connection between her leave requests and her disciplinary actions nor countered Defendant's legitimate and non-discriminatory reasons for its adverse actions.

### III. Count VI: ADA Hostile Work Environment

Plaintiff similarly fails to show sufficient evidence in support of her hostile work environment claim. To establish an ADA hostile work environment claim, Plaintiff must prove that: "(1) she was disabled; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment unreasonably interfered with her work performance; and (5) the defendant either knew or should have known about the harassment and failed to take corrective measures." *Trepka v. Bd. of Educ.*, 28 Fed. Appx. 455, 460–61 (6th Cir. 2002). The alleged conduct must be "sufficiently severe or pervasive to create an objectively hostile or abusive working environment," such that "a reasonable person would find [the environment] hostile or abusive." *Harris v. Forklift Sys., Inc.*, 114 S. Ct. 367, 370 (1993). Plaintiff must also subjectively perceive the environment as abusive. *Id.*

Plaintiff must show that she was "ridiculed or insulted because of [her] disability to the point that it 'permeated' [her] work environment." *Hardenburg v. Dunham's Athleisure Corp.*, 963 F. Supp. 2d 693, 707-08 (E.D. Mich. 2013); *see*

*also Wheeler v. Jackson Nat'l Life Ins. Co.*, 159 F. Supp. 3d 828, 860 (M.D. Tenn.), *aff'd*, 666 F. App'x 453 (6th Cir. 2016) (holding that "constant interactions in condescending and intimidating tones," "regular ridicule and negative comments," and deprivation of FMLA rights, *inter alia*, did not constitute a hostile work environment). Plaintiff's allegations fail to meet this standard.

Plaintiff argues that she was "punished" for making accommodation requests, has been frustrated that her "due diligence" is required to correct her FMLA claims, is concerned that her work performance is under a microscope due to being placed on probation, and is experiencing anxiety and depression as a result of her work environment. (ECF No. 15, PageID.331); (ECF No. 13-2, PageID.130-32). Putting aside the fact that being placed under a "microscope" is a non-discriminatory and justifiable consequence of being placed on a workplace probation, when taking Plaintiff's subjective allegations as true, her experience does not even reach the level of being "merely offensive," let alone severely abusive, discriminatory, "physically threatening", or "humiliating." *Harris*, 114 S. Ct. at 370. (listing examples of abusive behavior and reaffirming that "merely offensive" conduct is not actionable under hostile work environment claim). Furthermore, Plaintiff's frustration alone in discussing her FMLA leave with Sedgwick and Delta representatives cannot constitute harassment. *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 768 (6th Cir.

2015) ("meetings do 'not constitute harassment simply because they cause the employee distress.' (quoting *Keever v. City of Middletown,* 145 F.3d 809, 813 (6th Cir.1998))). Defendant is therefore entitled to granted summary judgment on this claim.

## CONCLUSION

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [13] is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **CLOSED**.

**SO ORDERED**.

Dated: June 14, 2021

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge